UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE №.: O7-20129-CIV-HUCK
MAGISTRATE JUDGE: SIMONTON

CARLOS B. BRANDT,

    Plaintiff,

v.

MAGNIFICENT QUALITY FLORALS,
CORP. and MOISES SANCHEZ,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED.R.CIV.P., RULE 50; MOTION TO DISMISS CLAIMS AS SANCTION FOR FILING AND SUBMTITING SHAM CLAIMS AND FOR FAILING TO MAKE REQUIRED DISCLOSURES UNDER RULES 26 AND 37 and for FEES AND COSTS**

    Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter judgment in their favor pursuant to Federal Rules of Civil Procedure, Rule 50, or in the alternative, to dismiss the claims for filing sham claims and egregious violations of disclosure requirements under Rules 26 and 37 and for Fees and Costs, and as grounds state the following.

    1.    In this FLSA overtime case, Plaintiffs allege that Defendants kept no formal time-keeping records. For purposes of this motion, and in all likelihood under the meaning of that term, this will be accepted as true.

    2.    In such a situation, the Plaintiff, as set forth in the landmark Supreme Court case, *Anderson v. Mt. Clemens Pottery Co.* 328 U.S. 680, 686-688, 66 S.Ct. 1187, 1192 (U.S. 1946), quoted in the Memorandum of Law below, has the burden to put forth a *prima facie* case that he,

or in this case they, worked in excess of 40 hours per week.  It is a relatively low burden, but Plaintiffs have failed to submit any evidence to fulfill that *prima facie* element or from which the jury can reasonably infer the hours that they worked, even in a vague way.

       3.       In addition, regardless of whether the employer kept time records, there must be some evidence that the employer was notified of the overtime hours claimed to be worked.  In this case, the Plaintiffs have submitted no evidence of knowledge on the part of the employer, either constructive or actual.

       4.       The requirements and interpretations of those requirements are discussed in detail in the decisions excerpted below.  In this case, Plaintiffs have proceeded with "Bald" assertions, unsupported by any evidence whatsoever.  They failed to detail the work and hours the alleged they worked in discovery, and at trail, they have admitted that they had knowledge of a lot of information which they never disclosed.

       5.       In addition, much of Plaintiffs' testimony has been proven false, and the vast majority of their claims must be reduced as a matter of law.

       6.       First, Plaintiff, Brandt, overstates the effective time period if willfulness is found, as 156 weeks instead of 140 weeks, or 104 weeks instead of 88 weeks because Plaintiff was terminated as of October 1, 2006 and this matter was filed on January 17, 2007, an elapsed period of exactly 16 weeks.  This error is inexcusable.

       7.       Next, as Plaintiffs' evidence shows, Mr. Brandt has overstated his hourly wage by 31% in 2004 and 18% in 2005.  These overstatements are similarly inexcusable.

       8.       Next, Plaintiff, Brandt, testified that work done on the Mama's Flowers account made up approximately half his overtime claim.  The undisputed evidence shows that MQF lost the Mama's account in April, 2005.  Thus, half of 17.5 months of his 20.5 month claim is a

sham.  This, perhaps most of all, is unforgivable fraud on this Court.  There is no explanation, such as carelessness of counsel, that can excuse this mistake.  Mr. Brandt clearly has perjured himself and for this the ultimate sanction of dismissal should be awarded the Defendants along with all attorneys' fees and costs incurred in this action to be paid jointly and severally by Mr. Brandt, Mr. Lopez, and  their attorneys.

WHEREFORE, based on the foregoing and the following Memorandum of Law, Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter judgment in their favor pursuant to Federal Rules of Civil Procedure, Rule 50, or in the alternative, to dismiss the claims for filing sham claims and egregious violations of disclosure requirements under Rules 26 and 37 and for Fees and Costs incurred in this action.

## **MEMORANDUM OF LAW**

This suit should be dismissed on factual as well as legal grounds.  Plaintiffs have submitted no competent evidence to support their claims, and so many of them have been proven to be absolute shams that the matter should be dismissed and all fees and costs incurred by the Defendants should be awarded against the Plaintiffs and their attorneys.  The fundamental standard for judging the sufficiency of Plaintiffs' evidence is  as follows:

> An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under s 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

> [2] When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col.L.Rev. 355.

*Anderson v. Mt. Clemens Pottery Co.* 328 U.S. 680, 686-688, 66 S.Ct. 1187, 1192 (U.S. 1946).

An example from this Court showing how an employee can meet this low standard follows:

> Although Mr. Santelices is unable to demonstrate the exact amount of hours for which he was uncompensated, this does not defeat his claim at this stage. His testimony was that he worked more than forty hours, and it is the duty of the factfinder to draw all reasonable and just inferences in his favor. *See, e.g., Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir. 1986) (reversing the district court's finding that the plaintiffs' evidence of damages was too speculative and stating that "*Mt. Clemens Pottery* leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA"). Mr. Santelices makes the following argument based on his deposition testimony to support his burden of proof under *Mt. Clemens:*

> Santelices testified that he worked 'on an average basis, it was more than forty [hours].' Santelices, p. 157:6-8, 159:3-8. He was required to and did arrive at work by 6:30 a.m. *Id.,* pp. 112:16-19; 153:19-21. He took about fifteen (15) minutes for lunch. *Id.,* p. 233:20-23. He would drive home, spend 20 minutes or so changing and then watched Jeopardy. *Id.,* p. 230:8- 20. Jeopardy began at 7:30 p.m. *Id.,* 8-20. '[E]very day I was getting home after five.' *Id.,* p. 159:6-7. He worked six (6) days a week. *Id.,* p. 153:6-7.

*Santelices v. Cable Wiring* 147 F.Supp.2d 1313, 1328 -1329 (S.D.Fla. 2001).

The difference between the evidence submitted by Mr. Satelices and that offered by Mr. Brandt is that in this case, there is simply no "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens, supra*. His testimony, and that of his witnesses, allege sporadic expenditures of time, phone calls here and there, various tasks performed without assigning times of day, and there is otherwise no way for the factfinder to even approximate the amount of time he spent other than to accept his bald statement of his estimate based on his memory. He comes to the conclusion that these tasks added up to a tremendous amount of overtime work, but he never explained why the tasks took so much time or had to be performed outside of regular business hours.

Furthermore, unlike most of the cases relying on the *Mt. Clemens* analysis, in this case, Defendants have offered a substitute measure of time worked to a time card system "to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens, supra*. Once the employer does this, the burden on the employee is far greater.

In addition, Brandt never established the "Employment" prong of the overtime prima facie test, in that he never established that his employer knew about the work he alleges he was doing past business hours.

> An employee wishing to state a claim for overtime compensation under the FLSA must show, "with definite and certain evidence, that [s]he performed work for which [s]he was not properly compensated." *Reeves v. International Tel. and Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir.1980). Furthermore, that employee bears the burden of showing that they were "employed" during the alleged overtime hours. *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995). "Employment" occurs if an employer has actual or constructive knowledge that the employee was working. *Id.* (citing *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986)). If, however, the " 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." ' *Newton,* 47 F.3d at 748.

> A review of the competent summary judgment evidence reveals how far Plaintiff is from stating an FLSA claim for overtime compensation. Plaintiff, in her responsive affidavit, states that she worked an average of 50 hours per week. **While it is not the Court's role to decide the facts on a motion for summary judgment, it is clear that a mere averment of hours worked does not constitute "definite and certain evidence" of actual hours worked**.
>
> Even assuming that Plaintiff worked overtime, she offers no competent evidence of having notified Defendants of her extended hours. Indeed, given Plaintiff's flexible work schedule, it is unreasonable to burden the Defendants with having to keep track of her hours, and more unreasonable to hold them liable for not realizing that overtime hours had been worked.

*Rose v. Digital Convergence.Com Inc.*, 2001 WL 327843, 2 (N.D. Tex., 2001).

### **BRANDT'S OVERSTATEMENT OF HIS CLAIM**

During trial, the Court agreed with Defendants' counsel on the statute of limitations applied to these cases. Implementing that provision, this claim is reduced by sixteen weeks, October 1, 2005 – January 17, 2007, a period of exactly 16 weeks.

Next, Mr. Brandt based his entire claim on a wage of $24.00 per hour. He never earned exactly $24.00 per hour, and he did not make that wage until the year 2006. His average hourly wage for 2004 was $16.60 and $19.77. Defendants respectfully argue that the Court should not simply excuse these errors in the calculation of this claim, but at the very least, the jury should be instructed as to the applicable wage in the event this matter goes to the jury.

Next, Brandt testified that approximately half his 5-hour per week claim was due to extraneous work he did on the Mama's Flowers account. It has been shown that MQF lost this account in early April, 2005. Thus, half of the last 20.5 months of Mr. Brandt's claim is false, completely bogus. It is clear that this was a fabricated claim, made up by the Plaintiff. Defendants would argue that this likely occurred in response to their submission of the phone

and computer records; he had to come up with an alternative theory to replace what his original, fraudulent claim would have been, that he spent all of the time on the phone.

### LOPEZ'S LUNCH PERIODS

Mr. Lopez testified that, although he was forbidden from working during lunch, or told not to answer the phones, he answered the phones if they rang, because nobody else was around to answer them. The fact that the employer told him he was not permitted to work, and at least not required to work, should dispense with this claim. However, if it does not, even assuming Mr. Lopez's testimony is true, his acts of answering the phones if they rang, do not entitle him to overtime compensation because he has not established, or even alleged, that he spent his lunch periods primarily for the benefit of the employer. The rule of law is stated:

> Federal regulations discuss when a meal period should be counted as work time, defining a bona fide meal period as a "rest period" during which an employee "must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19. Plaintiffs argue that they were not completely relieved from duty because their lunch periods were often interrupted by work-related tasks. The question is not whether their meals were interrupted, however, but whether the degree of interruption caused them to spend their meal periods primarily for Hillcrest's benefit. *See Lamon v. City of Shawnee,* 972 F.2d 1145, 1157-58 (10th Cir.1992) (holding appropriate standard for evaluating whether meal periods are compensable is whether the employee's time is spent predominately for the benefit of the employer).

*Beasley v. Hillcrest Medical Center*, 78 Fed.Appx. 67, 69, 2003 WL 22317403, 2 (10th Cir. 2003). Mr. Lopez did not state how many times the phone would ring, what he did if he answered the phone, or otherwise indicate that his lunch periods spent "Eating at his desk" were dominated by tasks performed for the employer's benefit. This, combined with the fact that Mr. Lopez was instructed not to answer the phones, should dispense with this five-hour portion of Mr. Lopez's claim.

7

## THE REMAINDER OF MR. LOPEZ'S CLAIM

Mr. Lopez came into this trial claiming that he worked an average of 12 hours of overtime per week. At the same time, he testified in his deposition that the claim was more like 6-7 hours and that he would instruct his attorney to reduce it. This was not done.

Mr. Rodriguez estimated Mr. Lopez's claim at 6 – 7 hours including lunch. The lunch claim, if it is dispensed with, leaves a 1 – 2 hour per week claim. There is no competent evidence, or even testimony, to support that claim.

Mr. Lopez testified in his deposition that his claim for the remaining hours was largely based on the fact that he worked enormous hours leading to Mother's Day. This testimony has been proven false by the payroll records, which show that Mr. Lopez started working for MQF on May 9, 2005, which was the day after Mother's Day. Thus, whatever portion of the claim was based on that period of time is clearly false.

The only other testimony Mr. Lopez offers to support an overtime claim is that he appeared for work before normal starting hours. This claim is proven false by Lopez's SunPass records. It was also refuted by Mr. Rodriguez, who testified that only he had a key to the building and he did not arrive until at least 7:00 a.m. Clearly an employee is not entitled to overtime for waiting in the parking lot for his supervisor to let him into the building.

Mr. Lopez has submitted no evidence to support an overtime claim and his 12 hour per week claim was a sham.

> Although Mr. Santelices is unable to demonstrate the exact amount of hours for which he was uncompensated, this does not defeat his claim at this stage. His testimony was that he worked more than forty hours, and it is the duty of the factfinder to draw all reasonable and just inferences in his favor. *See, e.g., Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir.1986) (reversing the district court's finding that the plaintiffs' evidence of damages was too speculative and stating that "*Mt. Clemens Pottery* leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA"). Mr. Santelices makes the following argument based on his deposition testimony to support his burden of proof under *Mt. Clemens:*
>
> Santelices testified that he worked 'on an average basis, it was more than forty [hours].' Santelices, p. 157:6-8, 159:3-8. He was required to and did arrive at work by 6:30 a.m. *Id.,* pp. 112:16-19; 153:19-21. He took about fifteen (15) minutes for lunch. *Id.,* p. 233:20-23. He would drive home, spend 20 minutes or so changing and then watched Jeopardy. *Id.,* p. 230:8- 20. Jeopardy began at 7:30 p.m. *Id.,* 8-20. '[E]very day I was getting home after five.' *Id.,* p. 159:6-7. He worked six (6) days a week. *Id.,* p. 153:6-7.

*Santelices v. Cable Wiring,* 147 F.Supp.2d 1313, 1328 -1329 (S.D. Fla. 2001)

> We agree with Stuckey's that *Mount Clemens* requires the plaintiff in a falsified records case to present a prima facie case as to the unpaid overtime hours worked before the burden of proof shifts to the defendant. We also agree that this burden must be met individually by each plaintiff in a case such as this where differing work situations make pattern evidence unpersuasive. Although the district court failed to articulate this portion of the *Mount Clemens* standard in its memoranda, we conclude that Stuckey's has not demonstrated on the record before us that the district court erred in its specific awards to the hourly employee plaintiffs.
>
> In its initial decision following trial, the district court included the following finding:
>
> 42. The parties have advised the court during trial that, in the event that the court holds in favor of the plaintiffs, they believe they can agree upon a calculation of the amounts due each plaintiff.... The court ... does not have an adequate record before it concerning the precise damages sustained by each plaintiff. Therefore, if the parties cannot reach a mutual agreement as to damages, the court will consider the damages sustained herein in light of legal precedents hereinafter set out, including the possibility of taking additional testimony.

*Murray v. Stuckey's Inc*. 939 F.2d 614, 621 (8th Cir. 1991)

> The Court finds plaintiff has failed to adduce sufficient evidence to withstand summary judgment on his wage and hour claims. The only evidence plaintiff offers is his assertion that Wal-Mart required him to work off the clock in excess of 200 times for which he was never compensated. Plaintiff alleges he worked off the clock as follows: (1) approximately 92 times before clocking in for his shift, (2) approximately 92 times over his unpaid lunch break, [FN11] and (3) approximately 55 to 60 times after clocking out at the end of his shift. (Simmons Dep. 157). However, plaintiff fails to support his assertions with any additional evidence. In fact, although plaintiff alleges he worked off the clock approximately 200 times since 1999, he fails to identify a single specific day on which this occurred. (Simmons Dep. 165-74). Plaintiff claims he kept a personal log of all hours he worked. However, he fails to offer these records into evidence so that a comparison could be made to the hours for which he was compensated. Plaintiff also fails to offer any paychecks or paystubs as evidence to show the amount of hours for which Wal-Mart actually compensated him. Further, plaintiff himself admits he never made a comparison of his personal log of hours to his pay stubs to see if Wal-Mart had underpaid him. (Simmons Dep. 206). Put simply, plaintiff's bald assertion that from 1999 to 2003 he worked off the clock over 200 times on unspecified days is not enough to create genuine issues of material fact as to whether he is owed any additional compensation. [FN12] Plaintiff has failed to produce sufficient evidence to show the amount and extent of his uncompensated work as a matter of "just and reasonable inference."
>
> FN11. Plaintiff avers the work he performed over lunch either occurred after clocking out for lunch (off the clock) or it occurred on the clock for which plaintiff's supervisors later adjusted plaintiff's time sheets so that they did not include those hours.
>
> FN12. This is especially true regarding plaintiff's claim for unpaid overtime wages since there is no specific information regarding when plaintiff worked more than forty hours in a week.
>
> With regard to working through his lunch break, plaintiff claims his supervisor improperly altered plaintiff's records to reduce his compensation. In support of this allegation, plaintiff refers to several time adjustment forms filed by his supervisor. (Pl. Mem. Opp. at 37, fn. 39). Plaintiff also points to thirteen instances where his supervisor manually altered the hours on his time reports. (Pl. Mem. Opp. at 37, fn. 37). Defendant notes that this was common practice and that plaintiff's supervisors were merely correcting plaintiff's time where he neglected to clock out for lunch.
>
> *11 These records alone fail to create genuine issues of material fact. Plaintiff

has not provided evidence of his compensation for the days in which his time was adjusted. He has also failed to establish that the days he allegedly worked through lunch were the same days in which his supervisors adjusted his time. The very fact that Wal-Mart has a form designated for adjusting improperly recorded time implies that it is not a totally uncommon occurrence. Thus, the use of these time adjustment mechanisms alone fails to establish a reasonable inference of unpaid wages or overtime compensation.

Therefore, plaintiff has failed to adduce sufficient evidence to withstand summary judgment on his claims under the FLSA and O.R.C. § 4111.01, *et seq*. Accordingly, the Court grants defendant's summary judgment motion on these claims.

*Simmons v. Wal-Mart Associates, Inc*.  L 1684002, 10 -11  (S.D. Ohio 2005)


### **NO DOUBLING OF HOURS BASED ON GOOD FAITH**

The Court also agrees that the proposed notice should be amended to correct the statement that "in most circumstances employees are entitled to double their unpaid back wages." Pl.Ex. A. This overstates a plaintiff's entitlement to doubling, which is not available if the employer acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA. *See Bankston v. State of Illinois,* 60 F.3d 1249, 1254 (7th Cir.1995). Such damages are not necessarily available in "most" cases as plaintiff contends.

*Heckler v. DK Funding, LLC*  502 F.Supp.2d 777, 781 (N.D.Ill. 2007).  Here, it has clearly been shown that Defendant believed that his generosity in allowing Brandt to attend classes and work a flexible schedule, the fact that he was a salaried, commissioned salesperson, and the fact that he had no idea he was working any overtime and has evidence to prove it, establishes that he acted in good faith in dealing with Mr. Brandt.  The fact that he told Mr. Lopez not to work lunches and that Mr. Lopez has submitted no other evidence to rebut his SunPass records, shows that Mr. Sanchez acted in good faith with regard to his employment.

WHEREFORE, based on the foregoing and the following Memorandum of Law, Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter judgment in their favor pursuant to Federal Rules of Civil Procedure, Rule 50,

11

or in the alternative, to dismiss the claims for filing sham claims and egregious violations of disclosure requirements under Rules 26 and 37 and for Fees and Costs incurred in this action.

RESPECTFULLY SUBMITTED this 27th day of February, 2008.

> JEFFREY A. NORKIN, P.A.
> Attorney for Defendants
> 8751 W Broward Blvd., Suite 307
> Plantation, FL. 33324
> (954) 370-8240
> (954) 337-3765 – fax
> Fl. Bar No. 0969966
> jeff@norkinlaw.com
>
>
> By: /s/  Jeffrey A. Norkin, Esq.
>       Jeffrey A. Norkin, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was hand delivered in open court and served by delivery to the Court at trial on February 27, 2008.  It is now filed and served again via electronic filing on March 2, 2008 and hand delivered in open court on February 28, 2008 to: Jamie H. Zidell, Esq., 300 71st Street, Suite 605 Miami Beach, FL 33141.

> By: /s/  Jeffrey A. Norkin, Esq.
>       Jeffrey A. Norkin, Esq.