## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE №.: O7-20129-CIV-HUCK
MAGISTRATE JUDGE: SIMONTON

CARLOS B. BRANDT,

    Plaintiff,

    v.

MAGNIFICENT QUALITY FLORALS,
CORP. and MOISES SANCHEZ,

    Defendants.

_____/

## DEFENDANTS' MOTION FOR JUDGMENT OF DISMISSAL AND MONETARY SANCTIONS PURSUANT TO FED.R.CIV.P., RULES 26 AND 68, 28 U.S.C. §1927, AND THE COURT'S INHERENT AUTHORITY TO IMPOSE SANCTIONS; AND FOR CONTEMPT PROCEEDINGS FOR PERJURY AND SUBORNING PERJURY

Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter as sanctions against the Plaintiffs a judgment of dismissal; to impose monetary sanctions against the Plaintiffs and their counsel, Jamie H. Zidell, Esq. and Karl David Kelly, Esq.; and to conduct an investigation and proceedings to determine whether Brandt, Lopez, Zidell, Kelly, and Enrique Rodriguez should be held in criminal or civil contempt of court, and more specifically state the following.

1.    This FLSA overtime case went to trial in the week beginning February 25, 2008. The jury returned its verdict on February 29, 2008.

2.    Plaintiff, Carlos Brandt, claimed he worked an average of five hours of overtime per week over a three year period, sought $28,080.00 in overtime pay, and $56,160.00 after doubling via liquidated damages. The jury found Mr. Brandt worked 18 hours of overtime, and

awarded him $604.26.

3.      Defendants served upon Mr. Brandt offers of judgment in this case in the amount of $1,000.00 on April 18, 2007 and $8,000.00 on June 5, 2007.[1]  Brandt's counsel never made a counteroffer.

4.      Plaintiff, Orestes Lopez, claimed he worked 12 hours of overtime every week and was entitled to $4,570.56, or $9,141.12 after doubling.  The jury found he worked no overtime.

5.      Defendants served offers of judgment on Mr. Lopez in the amount of $500.00 on April 18, 2007 and $2,000.00 on June 5, 2008.   Mr. Lopez never made a counteroffer to either of these offers.

6.      Mr. Brandt's claim was without any factual or evidentiary foundation.[2]  Other than the nine hours stipulated by Defendants, he never said when exactly he worked even one hour of overtime.  He also never specified the time he spent attending classes or flying airplanes, which accommodations materially affected his claim.  Only in one example did he specify tasks he performed; and that example, work for Mama's Flowers, was fabricated in concert with his "Eyewitness", Enrique Rodriguez.  Further, he never alleged that the employer knew he was working or required him to work the alleged overtime hours.  Brandt irrefutably perjured himself with regard to the Mama's work, and he suborned the perjury of Enrique Rodriguez to corroborate that false testimony.

7.      Mr. Lopez's claims also were shown to be two parts perjury and one part frivolous.  His claim had three parts: (1) he testified in his deposition and at trial that he worked

---

[1] The offers of judgment are submitted herewith as Composite Exhibits A and B.  Exh. A is the set of offers served on April 18, 2007 and Exh. B is the set of offers served on June 5, 2008.  The exhibits include the cover-letters which are referred to herein.

[2] With the exception of the 18 hours awarded by the jury.  Whenever his claims are characterized as without foundation, fraudulent, or frivolous, those comments always intemd this lone exception, which Defendants at all times were willing to pay.

13 hours of overtime in each of the three weeks before Mother's Day, 2005; (2) he worked every day beginning at 6:30 a.m.; and (3) he worked through lunch every day.  Parts (1) and (2) have been shown to be false; and part (3) has been shown to be frivolous, failing to establish several *prima facie* elements of the claim.

8.      As a result, this matter was litigated in bad faith, was founded mainly on perjury, and was the product of a total lack of investigation and preparation by counsel.  Plaintiffs' case should be dismissed as a sanction, Mr. Brandt, Mr. Lopez, Mr. Zidell and Mr. Kelly should be ordered to pay Defendants' legal fees and costs, and the Court should use its authority to conduct an investigation into whether their perjury and subornation of perjury, and the perjury of Enrique Rodriguez, rise to the level of criminal contempt, or merely constitutes civil contempt.

WHEREFORE, based on the foregoing and the following Memorandum of Law, Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter as sanctions against the Plaintiffs a judgment of dismissal; to impose monetary sanctions against the Plaintiffs and their counsel, Jamie H. Zidell, Esq. and Karl David Kelly, Esq.; and to conduct an investigation and proceedings to determine whether Brandt, Lopez, Zidell, Kelly, and Enrique Rodriguez should be held in criminal or civil contempt of court.

## **MEMORANDUM OF LAW**

## I.      SUMMARY OF THE ARGUMENT

If Plaintiff, Brandt, sued for what he was entitled to, this suit would have ended shortly after it was filed.  Defendants proved this by serving offers of judgment, the second of which far exceeded the amount he ever could have hoped to obtain.  But, of course, as is widely known in our profession, overtime cases, including this one, are rarely about how much overtime the Plaintiffs were entitled to; it was about a bad faith grab for attorneys' fees.  Because this case

was litigated in bad faith from its inception, Plaintiffs and their attorneys should be held to pay all of Defendants' legal fees and costs.

Looking at Plaintiffs' counsel's conduct at the pleading stage, during discovery, in summary judgment proceedings, and at trial, counsel's thought process becomes quite obvious: Defendant did not keep time records so I can win without even looking at evidence or even preparing for trial. I have two clients and a star witness, Enrique Rodriguez, who will testify to anything and the Defendants, without time records, will be defenseless. Somehow, however, Plaintiffs' counsel was so arrogant that they did not attend or read their clients' deposition testimony, or the evidence that *they* submitted. They did not calculate the correct hourly wages, determine one client's hiring date, determine the other's limitations period, plead the claim with any specificity, specify the claim in any way on the damages estimate, negotiate in good faith, or interview most of their witnesses to find out their scope of knowledge.

There could not be a better example of a case litigated in bad faith than this case. The perjury committed by Plaintiffs and Mr. Rodriguez at trial is irrefutable and cannot be explained by failure of memory. The following is a brief list of Plaintiffs' greatest malfeasance:

1. Brandt testifies that half his claim is due to work performed for Mama's Flowers, who stopped being Defendant's customer less than two months into Brandt's claim period. Rodriguez corroborates this testimony, who emphatically tells the jury that Brandt frequently worked late-night and early morning hours for that customer and deserves to be paid.

2. Lopez testifies that he started on April 11, 2005, which he figured out during the first day of trial. He testifies in his deposition that he worked for MQF three weeks before Mother's Day, working an average of 13 overtime hours each of those weeks. The

records that Plaintiffs themselves submitted as evidence show that his employment began the day *after* Mother's Day.

3. Lopez testifies that he starts work every day at 6:30 a.m..  His SunPass records, which again he submitted into evidence, prove this to be false.  Furthermore, Rodriguez and Ducasi testify that they were always the first into the building and that nobody could enter the building until one of them arrived.  Lopez's explanation as to how he entered through the cooler was inarguably false.

4. Plaintiff, Brandt, overstates the claims period by 16 weeks.

5. Mr. Brandt overstated his hourly wage by 31% in 2004 and 18% in 2005.

6. Lopez testifies in his deposition that his claim should be for 7 hours per week, not the 12 his attorney wrote.  He never saw the damages estimate before it was submitted.  He stated on the record that he would instruct his lawyer to reduce the claim.  That did not happen.

7. Both Plaintiffs testified at trial that their attorneys did not show them the phone records until December, 2007, eight months after they were served.  This is hard to believe because Brandt testified at length during his deposition about why those records were not reliable (Ridiculous testimony that the phone system was constantly malfunctioning that he did not repeat at trial).  However, if true, counsel would have been in extremely bad faith to not question his clients about the evidence which appear to discredit their claims.

8. During trial, after Plaintiffs had already clearly perjured themselves and they were clearly doing very badly, Defendants offered Plaintiffs' counsel to resolve the case with a dismissal with each side to bear their own fees and costs. This was a very generous offer.

It was met with a counter-demand of $100,000.00 by Mr. Zidell.  Mr. Zidell did not convey the offer to his clients.  Undersigned attorney later told Mr. Zidell that he must convey the offer and Mr. Zidell disagreed, stating that he has no such obligation "When the offer is so ridiculous I know it will be rejected."

9.  After trial, Defendant learned of an effort by Plaintiff, Brandt, and witness, Rodriguez, to suborn perjury from another man, Luis A. Cardenas Garcia, a truck driver employed by Floral Logistics, the company that handles Defendants' flower inventory.  Mr. Cardenas Garcia, in talking to Mr. Sanchez  after the trial was over, told Mr. Sanchez in passing that Mr. Brandt had asked him if he was willing to testify that Mr. Brandt was in Floral Logistics' cooler every morning at 6:00 a.m.  Mr. Cardenas Garcia refused to perjure himself despite repeated efforts by Mr. Brandt.  After Mr. Cardenas Garcia told Mr. Sanchez this, he agreed to execute an affidavit to this effect, but then rescinded this promise and now refuses to cooperate.  Defendants request that the Court undertake an investigation of these allegations along with the others concerning perjury and subornation of perjury in this case and to compel Mr. Cardenas Garcia to testify under oath on these matters.

The above list is just a sampling of what will be discussed at greater length below.  The overall result of Plaintiffs' and their attorneys' misconduct in this case is that this entire case was litigated vexatiously, in bad faith, and with improper motive.  Accordingly, as discussed below, sanctions in the form of attorneys fees and costs should be awarded to Defendants as a matter of law.

II.    **THE COURT'S INHERENT AND CONTEMPT AUTHORITY. LEGAL STANDARD FOR IMPOSING SANCTIONS of DISMISSAL, AWARD OF ATTORNEYS' FEES and  COSTS, AND CRIMINAL OR CIVIL CONTEMPT.**

Defendants herein move the Court to dismiss the Plaintiffs' claims and award Defendants all attorneys' fees and costs to return them as close as possible to their financial condition before this lawsuit was filed.   The Court's inherent authority to impose such sanctions for fraud upon the Court is firmly rooted in Supreme Court decisions as shown in the following excerpt.

> The court has the inherent authority to sanction a party or its counsel that acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Jaquette v. Black Hawk County,* 710 F.2d 455, 462 (8th Cir. 1983). Exercise of this inherent authority requires a finding of bad faith and addresses conduct that constitutes willful abuse of judicial process or fraud upon the court. *Stevenson v. Union Pac. R. Co.,* 354 F.3d 739, 751 (8th Cir. 2004); *Jaquette,* 710 F.2d at 462. The court exercises its inherent power to sanction cautiously and with "restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123; *see also Pls.' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir. 2005).

*Steinlage v. Mayo Clinic Rochester*  235 F.R.D. 668, 674 (D.Minn. 2006).  Perjury is commonly addressed by dismissal of the action.  For example:

> When a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud, dismissal of the whole case is proper. *Cox v. Burke,* 706 So.2d 43, 47 (Fla. 5th DCA 1998). A trial court has broad discretion to impose sanctions on litigants for their conduct before the court. *Morgan v. Campbell,* 816 So.2d 251, 253 (Fla. 2d DCA 2002). A trial court has the inherent authority to dismiss an action as a sanction when the plaintiff has perpetrated a fraud on the court. *Id. After holding an evidentiary hearing, this Court concludes that Plaintiff made several misrepresentations and false statements during discovery regarding prior similar injuries and the case is dismissed.*

*In re Houston*  305 B.R. 111, 114 (Bkrtcy. M.D. Fla. 2003).

However, in addition to perjuring themselves, Plaintiffs *suborned* the perjury of Enrique Rodriguez, and to a lesser extent, Steven Verger.  Suborning perjury is viewed by the Courts as the more egregious crime and only a combination of full dismissal, compensation for all fees and costs, and a criminal contempt proceeding are appropriate in this situation.   The reasons supporting this conclusion are examined in the following.

> Ordinarily civil contempt is used to compel compliance with an order of the court, although in some circumstances it may be used "to compensate the complainant for losses sustained through a fine payable to the complainant." *United States v. Waksberg,* 112 F.3d 1225, 1226 (D.C.Cir. 1997) (quoting *United States v. U.S. Mine Workers of America,* 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)); *see Int'l Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). In this case, however, civil contempt would be as ineffective a sanction for plaintiff's misconduct as would a monetary sanction. Ms. Young has abused the litigation process so substantially that she has lost the privilege of maintaining this lawsuit. **Coercing or seeking to obtain or manufacture false testimony "strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding.... Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts."** *Quela v. Payco-General Am. Credits, Inc.,* 82 Fair Empl. Prac. Cas. (BNA) 1878, 2000 WL 799750 (N.D.Ill.2000), *available at* No. 99 C 1904, 2000 WL 799750, 2000 U.S. Dist. LEXIS 6932, *20. Plaintiff has sought to undermine that purpose. A contempt citation under these circumstances would not preserve the integrity of the judicial process. The alternative, to initiate a criminal contempt proceeding, would neither address the many ways in which Ms. Young has frustrated the ability of the defendant to defend itself nor at this late date set the case back on track for trial or disposition.

*Young v. Office of U.S. Senate Sergeant at Arms,* 217 F.R.D. 61, 71 (D.D.C. 2003)(Bold emphasis added). As for Plaintiffs attorneys', monetary sanctions alone will likely suffice as provided for in 28 U.S.C. §1927.

## III.     LEGAL STANDARD FOR IMPOSING SANCTIONS UNDER §1927

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case **unreasonably and vexatiously** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). The purpose of which is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003); Footman v. Cheung, 341 F.Supp.2d 1218, 1223 (M.D. Fla. 2004) (citing O'Rear v. American Family Life Assurance Co.

of Columbus, Inc., 144 F.R.D. 410, 413 (M.D.Fla.1992)).  To justify an award of sanctions pursuant to Section 1927 (1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and vexatious" conduct must "multipl[y] the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001)(citing Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)). The most critical question, however, involves the first factor - whether the attorney was engaged "unreasonable and vexatious" conduct.  McMahan, 256 F.3d at 1128.  More specifically, though, "[t]he statute was designed to sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith'."  Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir. 1993)(quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991)).  Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants. . .  [i]t is concerned **only** with limiting the abuse of court processes." Footman, 341 F.Supp.2d at 1223 (quoting Roadway Express Inc. v. Piper, 447 U.S. 752 (1980)) (emphasis added).

Unlike other circuits that have required subjective bad faith for an award of fees, the Eleventh Circuit has stated that "§1927 allows district courts to assess attorney's fees against counsel and law firms who willfully abuse the judicial process by 'conduct *tantamount* to bad faith'." Footman, 341 F.Supp.2d at 1223 (quoting Avirgan, 932 F.2d at 1582) (emphasis added); Roadway Express Inc., 447 U.S. at 752.

Not only does the Eleventh Circuit allow for the imposition of §1927 sanctions, but it also allows for sanctions resulting from Rule 26 violations as follows:

> Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses. Indeed, Rule 26 of the Federal Rules of Civil Procedure imposes "an affirmative duty to engage in pretrial discovery in a responsible manner."

> Fed.R.Civ.P. 26(g) advisory committee's notes ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.").   Rule 26 explicitly encourages the imposition of sanctions for violations of the rule.

Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1305 (11th Cir. 2003). In this case, as discussed below, Plaintiffs' attorneys' failure to be responsible and candid in discovery is a major facet of their misconduct.

Overall, Plaintiffs' counsel appears to have not lifted a finger to investigate or substantiate their clients' claims.  As a result, Defendants were put through the inconvenience, anxiety, and most of all, the expense of litigation and a trial.  Plaintiffs' counsel should fully compensate Defendants for the damages they caused them to the extent that compensation cannot be obtained from their clients.

## IV.   PLAINTIFFS' BURDEN OF PROOF AND THEIR FAILURE TO MAKE GOOD FAITH EFFORTS TO SATISFY IT.

Plaintiffs behaved in this case as if they could simply testify to whatever they wished and they would win as a matter of law because Defendants did not keep time records.  The *Mt. Clemens* standard has been recited repeatedly in previous pleadings.  It states, in a nutshell, that even if Defendants do not produce substitutes for actual time records, as they did in this case, Plaintiffs still must produce evidence that they *actually* worked certain overtime hours.  They do not, however, have to be precise in calculating the exact amount of hours worked.  Plaintiff, Brandt, failed to do this.  Plaintiff, Lopez did, but his claims, as shown, were either fabricated or frivolous.

An example from this Court showing how Brandt could have met this low standard follows:

> Although Mr. Santelices is unable to demonstrate the exact amount of hours for which he was uncompensated, this does not defeat his claim at this stage.

His testimony was that he worked more than forty hours, and it is the duty of the factfinder to draw all reasonable and just inferences in his favor. *See, e.g., Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir. 1986) (reversing the district court's finding that the plaintiffs' evidence of damages was too speculative and stating that "*Mt. Clemens Pottery* leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA"). Mr. Santelices makes the following argument based on his deposition testimony to support his burden of proof under *Mt. Clemens:*

Santelices testified that he worked 'on an average basis, it was more than forty [hours].' Santelices, p. 157:6-8, 159:3-8. He was required to and did arrive at work by 6:30 a.m. *Id.,* pp. 112:16-19; 153:19-21. He took about fifteen (15) minutes for lunch. *Id.,* p. 233:20-23. He would drive home, spend 20 minutes or so changing and then watched Jeopardy. *Id.,* p. 230:8- 20. Jeopardy began at 7:30 p.m. *Id.,* 8-20. '[E]very day I was getting home after five.' *Id.,* p. 159:6-7. He worked six (6) days a week. *Id.,* p. 153:6-7.

*Santelices v. Cable Wiring*  147 F.Supp.2d 1313, 1328 -1329 (S.D.Fla. 2001).

The difference between the evidence submitted by Mr. Satelices and that offered by Mr. Brandt is that in this case, there is simply no "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192 (U.S. 1946).  Other than the false "Mama's" testimony, Brandt did not even allege specific work performed, or give any information from which any kind of inference could be drawn.

In addition, Brandt never established the "Employment" prong of the overtime prima facie test, in that he never established that his employer knew about the work he alleges he was doing past business hours.

An employee wishing to state a claim for overtime compensation under the FLSA … bears the burden of showing that they were "employed" during the alleged overtime hours. *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995). "Employment" occurs if an employer has actual or constructive knowledge that the employee was working. *Id.* (citing *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986)). If, however, the " 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is

not a violation of § 207." ' *Newton,* 47 F.3d at 748.

> **A review of the competent summary judgment evidence reveals how far Plaintiff is from stating an FLSA claim for overtime compensation. Plaintiff, in her responsive affidavit, states that she worked an average of 50 hours per week. While it is not the Court's role to decide the facts on a motion for summary judgment, it is clear that a mere averment of hours worked does not constitute "definite and certain evidence" of actual hours worked**.

> Even assuming that Plaintiff worked overtime, she offers no competent evidence of having notified Defendants of her extended hours. Indeed, given Plaintiff's flexible work schedule, it is unreasonable to burden the Defendants with having to keep track of her hours, and more unreasonable to hold them liable for not realizing that overtime hours had been worked.

*Rose v. Digital Convergence.Com Inc.*, 2001 WL 327843, 2 (N.D. Tex., 2001)(Bold emphasis added).

Overall, because Plaintiffs concealed the nature of their claims throughout the discovery period, they violated Rule 26, which requires the full disclosure of evidence and damages. Severe sanctions should be imposed because by concealing their claims, Plaintiffs were able to get this case to trial when it never should have reached trial.

## V.   REVIEW OF THE LITIGATION.

**A.   <u>Efforts to settle and advise Plaintiffs their claims were frivolous</u>**.  This suit was filed on January 17, 2007, 3½ months after Mr. Brandt was terminated and approximately 15 months after Mr. Lopez was terminated.  Plaintiffs filed their Statement of Claims on March 12, 2007 (DE 10), seeking total damages in excess of $60,000.00, but providing absolutely no calculations or information as to how the hours alleged were arrived at.  On March 28, 2007, undersigned, Jeffrey A. Norkin, Esq., appeared in the case as substitute counsel.

Two days after appearing and investigating the claims and the documentary evidence eventually submitted at trial, undersigned filed (DE 22) Defendants' Response to Plaintiffs' Notice of Claims.  In that Response, Defendants put Plaintiffs fully on notice as to exactly how

and why their claims were frivolous.  Specifically, they stated:

> 1.     To  the best of Defendants' recollection, and based on their investigation thus far, Mr. Brandt never worked more than 40 hours in any week of his employment with Defendants and therefore is entitled to no overtime compensation.  If Mr. Brandt  ever worked  more than 40 hours in any given week, the number of such weeks is very small. Defendants in good faith believe he never worked more than 40 hours in any given week.

> 2.     Defendants did not keep time records for their employees.  However, Mr. Brandt's job was  as a salesman and customer service representative.  Nearly all of his work was done over the phone.  Defendants have a majority of the telephone bills from the period in which Mr. Brandt was  employed and are furnishing these records to Plaintiffs' counsel.   These records support Defendants' assertion that Mr. Brandt rarely worked anywhere close to 40 hours per week.  This conclusion is supported via the records even with generous rounding and allowance for time spent before and after the first and last calls of the day.

> 3.     Further, Mr. Brandt was a commissioned salesman.  In many, if not most of the weeks he worked, more than half of his overall wages were commissions.  Therefore, even if he worked more than 40 hours, which he did not, Defendants believe he is exempt from the entitlements of the Act. However, counsel has not yet completed his research on this issue or the calculations required as he has only been working on the case for three days. The pay records showing commission versus ordinary wages are being furnished to the Plaintiffs via Federal Express on this date.

(DE 22).  The first two paragraphs were completely true.  The final paragraph turned out to be

inaccurate, as salary did outpace commissions.  Nevertheless, the above established that Brandt's

claim was small and that Defendants never suspected that he was entitled to any overtime.

As to Lopez, Defendants wrote the following:

> 1.     Mr. Lopez was employed from May 9, 2005 – October 14, 2005.

> 2.     Defendants repeat the above information for Mr. Lopez.  They do not believe Mr. Lopez ever worked more than 40 hours per week.  Defendants' office is routinely closed by 3:45 p.m. every work day.  It is for this reason that they doubt that either plaintiff ever worked more than 40 hours in any given week.

(Id.)

On April 18, 2007, Defendants served Rule 68 offers of judgment on the Plaintiffs:

$1,000.00 plus reasonable attorneys' fees to Mr. Brandt and $500.00 plus reasonable attorneys' fees to Mr. Lopez.  (Exh. A).  Along with the offers, Defense counsel delivered to Plaintiffs' counsel cover-letters, in which undersigned stated: "I will not hesitate to file a motion for Rule 11 sanctions at [the case's] conclusion to recover my clients' fees from your firm.  You have been fully noticed that the documentary evidence in this case does not support your clients' allegations;" (Exh. A, p. 7).

Plaintiffs did not respond to these offers.  On April 19, 2007, Defendants filed and served the documentary evidence that established that Lopez worked no overtime and that Brandt worked 9, and by inference, 18 hours of overtime, as the jury eventually found.  Still, Plaintiffs submitted no counteroffer and made no effort to resolve this matter.  The parties proceeded to an expedited mediation on May 31, 2007, which was fruitless.

A week after Magistrate Judge, Hon. Peter Palermo presided over the  mediation, on June 5, 2007, Defendants served a second set of offers: $8,000.00 to Brandt and $2,000.00 to Lopez, inclusive of reasonable attorneys' fees and costs.  (Exh. B).  Along with this set of offers, undersigned wrote the following.

> Please be assured that at the conclusion of this case I will seek sanctions against both of you individually and against your firm.  I am of the strong belief that you are bringing a meritless, fraudulent lawsuit and I believe that you strongly suspect that you are.  I acknowledge that one cannot know for a fact that what your clients are alleging  is false, but the evidence very strongly indicates that and you have absolutely no evidence to support their testimony.

> The enclosed offers result from the way  the law is drafted, which is unfortunate.  They have nothing to do with any belief on our part that there is the slightest chance we will not prevail in this case.  I believe that accepting these offers is the only responsible, competent action for you to take.

(Exh. B, p. 7).

**B.  Plaintiffs' Depositions.**  By reviewing the records provided, and the SunPass records provided by Mr. Lopez himself, Mr. Zidell and Mr. Kelley should have *known* their clients' claims were frivolous.  After their clients' depositions on August 24, 2007, they could have had no doubt.  In Lopez's deposition, he admitted that he had never seen his Statement of Claim, filed months earlier, before.  He had no idea how it was formulated.  According to him, his claim was for 7 hours of overtime per week, not 12 as stated.  He testified that he would instruct his lawyer to amend the claim.  This was never done.  The claim he asserted was that he worked through lunch and worked starting at 6:30 a.m.  His SunPass records prove the 6:30 a.m. claim was false and as for lunch, he admitted in his deposition that Defendant, Sanchez, told him not to work through lunch.  Mr. Lopez also testified in his deposition that he worked an average of 13 hours of overtime during the three weeks leading up to Mother's Day.  It turned out that Mr. Lopez's employment at MQF started the day *after* Mother's Day and the 39 hours he alleged he worked leading up to it were all in his imagination.  In fact, his own complaint alleged that he started working at MQF on May 5, 2007, which was the Thursday before Mother's Day.

As for Brandt, in his deposition he testified that his cell phone records demonstrated much of his overtime work but could not point to even one example.  He admitted that could not specify any one week in which he definitely worked overtime.  Through his lengthy deposition, he shed absolutely no light on the basis of his claim.  Instead, he just confused the issues with double-talk, evasive answers and pointing to documents that shed no light on any relevant issue.  Throughout his deposition, Mr. Brandt claimed that the phone records produced by the Defendants were defective because the phone system often went out of service.  He said his cell phone records would prove this.  He never brought this issue up at trial.

Mr. Brandt also testified in his deposition that he usually worked through lunch.  This

conflicted with Mr. Lopez's reason for having to work through lunch: that nobody was in the office.  Mr. Lopez's testimony supported Defendants' contention that Mr. Brandt's lunches were usually well more than an hour.  At trial, of course, Mr. Brandt omitted working through lunch as a basis of his claims.

      **C.  Lack of Disclosure and Lack of Investigation During Discovery.**  Plaintiffs' and their attorneys' lack of preparation and investigation prior to trial became apparent during the trial.  Both Mr. Brandt and Mr. Lopez testified that their attorneys did not show them the phone records that were at the heart of the case until December, 2007.  This would have been three months after the close of discovery and four months after their depositions.  In their depositions, both Plaintiffs seemed to be familiar with those same records, especially Mr. Brandt, who asserted repeatedly that the phone system was often out of service.

      Mr. Lopez testified at trial that he did not know his starting date until he went to court for the first day of trial.  He testified that he determined it to be April 11, 2005, based on the presence of a call to one of his customers on that date.  However, his wage records, and his SunPass records indicated that he started on May 9, 2005.  As stated above, his Complaint listed his starting date as May 5, 2005.

      Brandt, like Lopez, also did not know his claim period and misstated other objective data related to his claim.  He asserted in his Statement of Claim that the period was two or three full years.  He was not aware that the period was only two or three years back from the date of filing. Mr. Zidell seemed to argue outside the jury's presence that the limitations period is extended if the employer fails to hang a required poster in the office, but it is still not clear whether this legal argument has any basis in the law whatsoever.  Furthermore, Mr. Zidell and Mr. Kelly did not plead this additional relief, and they did not do any discovery on the issue.  It seems as if Mr.

Zidell came up with the theory to give the appearance of propriety to what was his incompetent error in the Statement of Claim.

Mr. Brandt's Statement of Claim also overstated his hourly wage by 31% in 2004 and 18% in 2005. These overstatements are as inexcusable as the errors in the claims period, and the false testimony discussed throughout this motion. It is difficult to imagine a basis on which the Court would excuse, and elect not to sanction Plaintiffs' counsel for their roles in preparing a Statement of Claim, and presenting testimony that was so completely false, unsubstantiated, and clearly not investigated at all. And, stunningly, Plaintiffs' counsel moved for sanctions *against undersigned* asserting that Defendants' motion for summary judgment was frivolous.

**D.** **Brandt Trial Testimony.** At trial, Brandt provided just one factual assertion as to what caused him to work overtime: he had to do off-hours work for a customer in Key West. He testified that 2-3 hours of his 5-hour per week claim was the result of his work on the Mama's account. When he was asked if he was aware that the Mama's account was terminated by the customer in mid-April, 2005, he answered that yes, he was aware of that. As a result, about half of his claim was proven beyond any doubt fraudulent, and the remainder was not supported by even one factual assertion of overtime worked, much less a piece of evidence! At the conclusion of the trial, nobody in the Courtroom, including Brandt himself, could have known what it was that he was alleging in this lawsuit, other than the bald assertion of "Five hours per week."

**E.** **Lopez Trial Testimony.** Mr. Lopez testified that he was at work at 6:30 a.m. His SunPass records showed that he was at a toll plaza at least 15 minutes from work anywhere from 6:40 – 7:00 a.m. He testified the records must have been wrong.

He testified he gained entry to the building through the cooler. The owners of the cooler testified that only they, and another company they work with, had the key to the cooler and that it

was rarely or never open before 7:00 – 7:30 a.m.

Even if Mr. Lopez's SunPass records and the cooler owners were wrong, and he was at work at 6:30 a.m., the phone records showed he never made a call until 7:00 a.m.  Nobody ever saw him at work before 7:00 a.m.  And, he did not testify that anyone knew he was there, asked or required him to be there.  Overall, his claim that he should be paid overtime for working between 6:30 and 7:00 a.m. is either based on perjury, or is so frivolous as to be sanctionable under Rule 11.

The remainder of Mr. Lopez's claim was that he worked through lunch.  He admitted in his deposition, however, that he was instructed not to work through lunch.  He did not substantially change this position at trial.  Never did he allege that he was asked to be in the office during lunch.  Rather, he stated that he stayed in the office during lunch because that was convenient for him.  As has been argued, it is fundamental that to be "Working" for overtime purposes during meal breaks, the work must be required to be performed by the employer.  To the contrary, Mr. Lopez testified repeatedly that he asked Mr. Sanchez to "Throw [him] a bone" by paying for him to work through lunch and that Mr. Sanchez always rejected those requests.  Overall, though arguably not perjurous, Mr. Lopez's claim that Defendants should pay him overtime for "Answering the phones" while he ate at his desk after Mr. Sanchez told him not to do so, is ludicrous and unsupported by any legal precedent.  Further, there is no public policy that could support a change in the law and Mr. Zidell never argued for such change.  Certainly, the Courts are busy enough with FLSA cases without employees suing to be paid for work their employers told them not to do.

**F.  Enrique Rodriguez Testimony.**  Enrique Rodriguez was fired by Mr. Sanchez shortly before the termination of Mr. Brandt.  Mr. Brandt went to work for (or with, if you

believe Mr. Rodriguez) Mr. Rodriguez at MQF's competitor, Elegant Blooms.  Mr. Rodriguez corroborated Mr. Brandt's testimony about Mama's Flowers in Key West before Mr. Brandt testified at trial and before the Defendants established the Mama's testimony as perjury.  Mr. Rodriguez's testimony was also perjury and he should be investigated for the imposition of criminal charges by the U.S. Attorney's Office along with Mr. Brandt and Mr. Lopez.

**G. Steve Verger Testimony.**  Mr. Verger, another former MQF employee, first falsely testified that he worked for MQF from 2004 – 2006 and stated he could not get any more specific.  He then testified falsely that he  recognized Mr. Lopez, when clearly he had never seen him before in his life.  He testified that Mr. Lopez was one of the men who worked in the cooler for the logistics company.  Despite his obvious lack of any knowledge, Mr. Zidell questioned him about Mr. Lopez's work schedule, and, sure enough, Mr. Verger stated that Mr. Lopez worked long hours.  Mr. Zidell seemed completely divorced from the reality of Mr. Verger's testimony and his incompetence as a witness with regard to Mr. Lopez.  On cross-examination, Mr. Verger admitted he left MQF in April, 2005, a month before Mr. Lopez started there, and that he never met Mr. Lopez before.  This surreal scene stands as a microcosm of Mr. Zidell's handling of this entire case: he pressed his clients' claims no matter how obviously absurd, false, or unsubstantiated they became.

Mr. Verger also, in vague terms, attempted to corroborate Mr. Brandt's testimony about his Mama's Flowers fantasy.  However, on this issue Mr. Verger was merely shown to have no competent information, and therefore, his testimony on this issue, or set of imagined facts, probably did not rise to the level of perjury.

**VI.    CONCLUSION**

The misconduct of Mr. Brandt, Mr. Lopez, Mr. Zidell, Mr. Kelly, and Mr. Rodriguez, has three victims: the Mr. Sanchez and his business, this Court, and the American public.

Defendants can be compensated, at least in large part, by the dismissal of this case and the full compensation of their costs and attorneys' fees.  The Court and the public however, will not be served by that sanction alone.  Rather, criminal contempt proceedings as against Mr. Brandt, Mr. Lopez and Mr. Rodriguez are required to protect the  public's interest in an effective, reliable judicial system and this Court from future abuses of its resources and its efforts to preserve the integrity of the civil litigation process.

WHEREFORE, Defendants, MAGNIFICENT QUALITY FLORALS, CORP. and MOISES SANCHEZ, move the Court to enter as sanctions against the Plaintiffs a judgment of dismissal; and for monetary sanctions against the Plaintiffs and their counsel, Jamie H. Zidell, Esq. and Karl David Kelly, Esq.; and to hold Brandt, Lopez, Zidell, Kelly, and Enrique Rodriguez in criminal or civil contempt of court.

RESPECTFULLY SUBMITTED this 17th day of March, 2008.

JEFFREY A. NORKIN, P.A.
*Counsel for Defendants*
2901 NW 126th Ave., #209
Sunrise, FL  33323
954-835-1220
954-337-3765 – fax
Fl. Bar No. 0969966


By:    /S/  Jeffrey A. Norkin
         Jeffrey A. Norkin, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via electronic filing on March 17, 2008 on Jamie H. Zidell, Esq., 300 71st Street, Suite 605 Miami Beach, FL  33141; Carmen Hellman, Esq., Zumpano, Patricios & Winker, P.A., 999 Ponce de Leon Blvd., PH 1110, Coral Gables, FL 33134, attorney for Enrique Rodriguez, via U.S. Mail.

By: /s/  Jeffrey A. Norkin, Esq.
        Jeffrey A. Norkin, Esq.