UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20129-CIV-HUCK/SIMONTON
<u>CONSENT CASE</u>

CARLOS BRANDT and
ORESTES LOPEZ,

    Plaintiffs,
v.

MAGNIFICENT QUALITY FLORALS
CORP. and MOISES SANCHEZ,

    Defendants.
_____/

**ORDER DENYING, IN PART, DEFENDANT MOISES SANCHEZ'S
AMENDED VERIFIED CLAIM OF EXEMPTION
AND MOTION TO DISSOLVE WRIT OF GARNISHMENT**

Presently pending before the Court is Defendant Moises Sanchez's Amended Verified Claim of Exemption From, and Emergency Motion For Hearing to Dissolve Writ of Garnishment (DE # 202). The Defendant has filed a Supplement to the Motion (DE # 204) and the Plaintiff has filed a Response in Opposition (DE # 210). Pursuant to the consent of the Parties, this case has been referred to the undersigned for final disposition (DE # 50). For the following reasons, the Defendant's Amended Verified Claim of Exemption From, and Emergency Motion to Dissolve Writ of Garnishment (DE ## 202, 204) is DENIED, in part, and GRANTED, in part. To the extent that Defendant Moises Sanchez claims that his income is exempt from garnishment pursuant to Fla. Stat. § 222.11(c), the Motion is Denied. To the extent that Defendant Sanchez seeks to limit the amount of garnishment pursuant to Fla. Stat. § 222.11(2)(c), the Motion is Granted.

    I.    <u>BACKGROUND</u>

The Defendant has filed the instant Amended Verified Claim of Exemption From,

and Emergency Motion to Dissolve Writ of Garnishment and Supplement thereto, seeking to have certain monies declared exempt from garnishment or, in the alternative, seeking to limit the amount of that garnishment (DE ## 202, 204). Prior to the Defendant filing the instant Motion, after a judgment was entered against the Defendant, on May 14, 2012, a Writ of Garnishment was issued on behalf of the Plaintiff garnishing any monies held by Wells Fargo Bank on behalf of Moises Sanchez and/or Magnificent Quality Florals Corp. (DE ## 134, 195). In compliance with the Writ of Garnishment, Wells Fargo garnished Mr. Sanchez's bank account in the amount of $3778.19 (DE # 195).

On May 25, 2012, at a hearing held before the undersigned, the Parties agreed that the monies held in the garnished account could only be garnished to the extent that those monies belonged to Mr. Sanchez, rather than his wife, Quismet Fernandez-Sanchez (DE # 205). The Court therefore ordered the Writ of Garnishment dissolved as to any monies in excess of $2300.50 held in that account, as those monies were deposited by and belonged to Quismet Fernandez-Sanchez (DE # 203). The Court set the matter for an evidentiary hearing regarding the ultimate disposition of the $2300.50 which remained subject to the Writ of Garnishment.

On that same day, the Defendant filed the instant Amended Verified Claim of Exemption seeking to have the Court determine that Defendant Moises Sanchez's ("Defendant" or "Sanchez") income is exempt from garnishment under the "Head of Family" exemption provided for in Florida Statute § 222.11.[1] In support of his exemption

---

[1] Prior to filing the instant Amended Motion, the Defendant filed a Verified Notice of Exemption From, and Emergency Motion to Dissolve Writ of Garnishment, wherein the Defendant contended that the Wells Fargo account that had been garnished was held jointly by Moises Sanchez and his wife, as tenants by the entireties and was therefore exempt from execution (DE # 196). However, at a hearing on the issue, the Defendant abandoned that argument and that the Wells Fargo Bank account at issue did not qualify

claim, Mr. Sanchez filed the requisite Claim of Exemption and Request for Hearing form with the Court (DE # 202-1).  On that form, Mr. Sanchez marked the box claiming that he was exempt from garnishment because he provides more than one-half of the support for a child/dependent, has net earnings of more than $500.00 per week, and had not agreed in writing to have his wages garnished (DE # 202-1).  Mr. Sanchez also submitted an "Affidavit of Exemption By Head of Family Pursuant to §222.12 Fla. Stat." which states that the monies attached by the garnishment at issue were funds due to him for his labor and services, and that Mr. Sanchez is the head of his family because he provides more than one-half the support for Daniel Sanchez, a dependent (DE # 202-1). In further support of his claim of exemption, Mr. Sanchez submitted copies of Wells Fargo Bank statements for the months of February, March and April, 2012, for a bank account held jointly by his wife and him (DE ## 202-2, 202-3, 202-4).

On May 25, 2012, the undersigned held an evidentiary hearing on the claimed exemption.  Following that hearing, Mr. Sanchez submitted a Supplement to his Amended Verified Claim of Exemption asserting that based upon the evidence presented at the evidentiary hearing, Mr. Sanchez should be determined to qualify as the "Head of the Family," under the Florida Statute, and thus the funds held by Wells Fargo Bank should be deemed exempt from garnishment (DE # 204).  He further argued that even if he was not deemed to be the "Head of Family," the Court should limit the amount of garnishment to 25% of his wages based upon Fla. Stat. § 222.11(2)(c), which limits the amount of disposable earnings that may be garnished to that permitted under the

---

as a tenancy by the entireties account because it was not opened jointly by Mr. Sanchez and his wife, but rather was first opened by his wife and she later added Mr. Sanchez to the account (DE # 202).  The Defendant thereafter filed the Amended Verified Claim of Exemption currently at bar.

3

Consumer Protection Act, 15 U.S.C. § 1673, *et seq*.

The Plaintiff filed a Response in Opposition to the Defendant's Amended Claim and Supplement to the Claim wherein the Plaintiff contended that, based on the evidence submitted at the evidentiary hearing, the Defendant did not qualify as the Head of Family because he does not provide one-half of the support to a dependent, and thus his income cannot be considered exempt under Florida statutes (DE # 210). In addition, the Plaintiff contended that because the Plaintiff has not sought a continuing writ of garnishment against the Defendant, the 25% limit on garnishments set forth in Fla. Stat. § 222.11(2)(c) is not applicable to this action.

Based upon the evidence presented at the evidentiary hearing, and the submissions from the Parties, both before and after that hearing, as set forth below, the Defendant's Claim and request that the Writ be dissolved is granted, in part, and denied, in part.

## II.   EVIDENTIARY HEARING

An evidentiary hearing was held before the undersigned on May 25, 2012, on the Defendant's Amended Verified Claim of Exemption. At the hearing, Defendant Moises Sanchez, the only witness called to testify, generally testified about his wife's and his income, sources of that income, and deposits and expenditures regarding the Wells Fargo checking account held jointly with his wife. The following summarizes Mr. Sanchez's relevant testimony at that hearing:

In the six months prior to the hearing, Mr. Sanchez earned approximately between $14,000 to $15,000 from his part-time job selling merchant services for a company named "Crediomatic," as well as, various odd jobs including, painting houses, pressure

cleaning, landscaping and selling flowers on the street (Tr. at 2, 4).[2]

Mr. Sanchez testified that over that same period of time, his wife made a little more than he had and averaged between $3500 to $4000 a month in salary and commission (Tr. at 4).

Mr. Sanchez testified that approximately six or seven years ago, he became a joint holder of the Wells Fargo Bank checking account, which was previously held by his wife. He conceded that for the Wells Fargo bank statement for April 16 through May 14, 2012 for that account reflected that he deposited his earnings totaling approximately $2300 into the account and for that same period of time, his wife deposited between $6,000 and $7,000. (Tr. at 8-9). Mr. Sanchez contended that the amount deposited by his wife for that time period was the highest amount she had ever deposited for any prior month (Tr. at 8-9). In addition, Mr. Sanchez testified that additional sums deposited by his wife between April 16 and May 14, 2012 were reimbursements for expenses and not income (Tr. at 9-10). He explained that his wife's payroll payments from her employer Comcast, which are automatically deposited into the bank account, are reflected as such on the bank statements, and the monies that he earns both from his part time job and from the various odd jobs that he performs, are reflected on the bank statements as "deposits made in a branch store." (Tr. at 21).

Mr. Sanchez testified that he has two children, Daniel Sanchez and Bianca Sanchez, and stated that almost all of his income goes directly to supporting Daniel Sanchez, but further testified that he and his wife do not allocate any portion of their

---

[2] The transcript citations refer to a "rough" transcript of the May 25, 2012 evidentiary hearing provided to the Court by the Court Reporter and citations thereto are denoted as (Tr. at ___).

respective incomes to each child but rather "just pay the bills." (Tr. at 12). He further explained that his and his wife's paychecks go into the account and they pay their bills, clothe their kids and support their family from those amounts (Tr. at 12). Mr. Sanchez testified that every pay that he and his wife receive are deposited into the Wells Fargo account and are used to support the children and household, and agreed that his wife had earned more than he over the last six months (Tr. at 13- 14). Mr. Sanchez testified that for the previous year, he and his wife filed joint income tax returns but could not recall whether either had declared themselves head of household (Tr. at. 15).

Upon questioning from the Court, Mr. Sanchez clarified that his argument is that for purposes of claiming the head of family exemption that his wife supports their child, Bianca Sanchez, and he therefore necessarily contributes more than 50% to support their other child, Daniel (Tr. at 17-18). Mr. Sanchez conceded that if the two children were taken equally, however, that he would not be providing half of the support for either of the children (Tr. at 18). He further stated that not every penny that his wife earns goes directly to clothe and feed the children, whereas everything he makes goes directly to for that purpose (Tr. at 18). At the conclusion of the hearing, Mr. Sanchez stipulated that his wife out earns him (Tr. at 20). The Wells Fargo Bank Statements for the preceding six months were admitted into evidence at the hearing.

III.     **LEGAL FRAMEWORK**

Florida Statute § 222.11. entitled "Exemption of wages from garnishment," provides, in relevant part,

> (1) As used in this section, the term:
>
> (a) "Earnings" includes compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or

6

> bonus.
>
> (b) "Disposable earnings" means that part of the earnings of any head of family remaining after the deduction from those earnings of any amounts required by law to be withheld.
>
> (c) "Head of family" includes any natural person who is providing more than one-half of the support for a child or other dependent.
>
> . . . .
>
> (2)(a) All of the disposable earnings of a head of family whose disposable earnings are less than or equal to $750 a week are exempt from attachment or garnishment.
>
> . . . .
>
> (c) Disposable earnings of a person other than a head of family may not be attached or garnished in excess of the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. s. 1673.
>
> (3) Earnings that are exempt under subsection (2) and are credited or deposited in any financial institution are exempt from attachment or garnishment for 6 months after the earnings are received by the financial institution if the funds can be traced and properly identified as earnings. Commingling of earnings with other funds does not by itself defeat the ability of a head of family to trace earnings.

Fla. Stat. § 222.11 (2010).  The debtor has the burden of establishing entitlement to an exemption.  *In re Parker*, 147 B.R. 810, 812 (M.D. Fla. 1992) (citing *In re Estridge*, 7 B.R. 873, 874 (Bankr. M.D. Fla. 1980).  Pursuant to the plain language of § 222.11, a debtor may meet this burden by establishing that he or she as the head of family, provides more than one-half of the support for a child or other dependent.  The head of family exemption is designed to "protect citizens against financial reverses and difficulties and to permit the citizen when residing in Florida and head of a family to be secure in money coming to him for his labor and services thereby supporting his family and preventing it

from becoming a public charge." *Mazzella v. Boinis*, 617 So.2d 1156, 1157 (Fla. Dist. Ct. App. 1993) (citation omitted). Therefore, § 222.11 is liberally construed in favor of the debtor. *Id.* at 1157.  However, "Florida exemption law is not to be used as a sword merely to defeat the claims of creditors.  The purpose of the head of family exemption is to preserve the home and shelter for the family, so as to prevent the family from becoming a public charge." *In Re: Beckmann*, Case NO. 98-10325-6B7, 2000 WL 33722204, * 3 (Bankr. M.D. Fla. 2000) (citing *Vandiver v. Vincent*, 139 So. 2d 704 (Fla. Dist. Ct. App. 1962).  A court inquiring into the head of family exemption must examine the facts of each case and determine whether the individual claiming the exemption is actually the head of family. See *Holden v. Gardner*, 420 So.2d 1082, 1083 (Fla.1982).

In addition, relevant for purposes of resolving the instant Motion, "The first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citing *United States v. Fisher*, 289 F.3d 1329, 1337–38 (11th Cir. 2002)). Courts "apply the plain language of a statute unless doing so would lead to an absurd result." *Pugliese*, 550 F.3d at 1303 (citing *United States v. Silva*, 443 F.3d 795, 797–798 (11th Cir. 2006)). "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *CBS Broadcasting, Inc. v. EchoStar*, 532 F.3d 1294, 1301 (11th Cir. 2008) (citing *United States v. Silva*, 443 F.3d 795, 797–798 (11th Cir. 2006)).

### IV.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the testimony of Moises Sanchez at the evidentiary hearing, and the exhibits submitted at the hearing, the undersigned makes the following findings of fact:

1. At the time of the evidentiary hearing, Moises Sanchez and his wife,

    Quismet Fernandez-Sanchez, lived together and financially supported their two children, Daniel Sanchez and Bianca Sanchez.

2. Quismet Fernandez-Sanchez earned more income than Moises Sanchez between the months of December 2011 and May 2012.

3. Moises Sanchez and his wife, Quismet Fernandez-Sanchez, share a checking account at Wells Fargo Bank ending in digits "5467", in which Mr. and Mrs. Sanchez co-mingle their funds including depositing their respective earnings into that account.[3]

4. Mrs. Sanchez deposited more income into the Wells Fargo Bank account shared with Mr. Sanchez between December 2011 and May 2012.

5. Moises Sanchez does not hold any other bank accounts.

6. Moises Sanchez and his wife do not allocate any percentage of the funds contained in the shared Wells Fargo Bank Account for any specific needs, and both he and his wife's earnings deposited into that account are used to support their children, Bianca and Daniel Sanchez.

7. The Wells Fargo Bank statements submitted into evidence do not reflect whether it was only Moises Sanchez's income, and not Mrs. Sanchez's income, that was used to support their son, Daniel Sanchez.

8. The Wells Fargo Bank statements submitted into evidence do not reflect whether Mrs. Sanchez's income was only spent to support her daughter,

---

[3] Although the Plaintiff mentions in passing that the Defendant deposited into this bank account "income derived from the both his work as an employee and an independent contractor," the Plaintiff did not advance any legal argument challenging the designation of the $2300.50 as wages which would be exempt if the other requirements of the exemption applied (DE # 210 at 2).

    Bianca Sanchez, and not to support her son, Daniel Sanchez.

9. As explained in more detail below, Defendant Moises Sanchez has not established that his earnings were used to provide more than one-half support for Daniel Sanchez.  Thus, Mrs. Sanchez is the head of the family for purposes of this garnishment proceeding.

10. The only sums at issue and subject to garnishment in the Wells Fargo Bank Account held by Mr. Sanchez and his wife ending in the digits "5467," are those sums consisting of Moises Sanchez's earnings which totaled $2300.50 at the time of the evidentiary hearing.

V. **LEGAL ANALYSIS**

  A. <u>Defendant is not the Head of Family pursuant to Fla. Stat. § 222.11</u>

In the instant Amended Verified Claim of Exemption, Defendant Sanchez asserts that the funds held in the garnished account are income from Mr. Sanchez's employment and are therefore exempt from garnishment because he qualifies as "Head of Family" under Fla. Stat. § 222.11 (DE # 202).  As stated above, to support his claim Mr. Sanchez has filed a Claim of Exemption Form and Affidavit of Exemption by Head of Family pursuant to § 222.12 Fla Stat. which state that Mr. Sanchez provides more than one-half of support for dependant Daniel Sanchez.[4]

Mr. Sanchez's argument that he qualifies as head of family fails for the following

---

[4] The Defendant did not argue that he was entitled to an exemption based upon a determination that he is the head of family at law or head of family in fact. See e.g. *See e.g. G.E.E.N. Corp. v. Southeast Toyota Distributors, Inc.*, Case No. 93-632-CIV-ORL-19, 1997 WL 561302 * 3 (M.D. Fla. 1997) (recognizing for purposes of head of family exemption under Florida law, debtor may establish status through: (1) a legal duty to support which arises out of a family relationship, or (2) continuing communal living by at least two individuals under such circumstances that one is regarded as in charge).

reasons. First, as established by Mr. Sanchez's testimony, the Wells Fargo Bank statements submitted as exhibits at the hearing, and pursuant to the stipulation by Mr. Sanchez that his wife Quismet Fernandez-Sanchez earned more than he did in the six months prior to the evidentiary hearing, the record clearly establishes that Mr. Sanchez did not contribute more than one-half of the funds used to support his family. Rather, the record demonstrates that it was Mrs. Sanchez who contributed more than fifty-percent of monies to the household income, including monies used to support Mr. and Mrs. Sanchez's offspring, Daniel Sanchez and Bianca Sanchez. Indeed, although Mr. Sanchez initially testified that all of his income goes to support the kids, and that his wife's income pays for incidentals that may not exactly support the kids, Mr. Sanchez conceded that his and his wife's funds are co-mingled and those co-mingled monies are not allocated for any specific need or bill. Similarly, there is no indication in the bank statements that the monies deposited by Mrs. Sanchez or Mr. Sanchez were withdrawn or expended specifically as to either one of the two children. In this regard, the Defendant did not offer any testimony or evidence as to how monies from the joint account were spent generally as it relates to the children. In other words, it is impossible to tell from the bank records or even from Mr. Sanchez's own testimony how Mrs. Sanchez's income is directed only to payment for her daughter, as opposed to her son, and conversely, how Mr. Sanchez's income is directed to payment for his son only, and not his daughter. Thus, because it is undisputed that Mrs. Sanchez deposited more than Mr. Sanchez into the commingled account that was used to satisfy the household expenses, for purposes of this garnishment proceeding, it was Mrs. Sanchez and not Mr. Sanchez who was the head of the family, as she was the person who "provid[ed] more than one-half of the support of a child or other dependent."

Mr. Sanchez seeks to escape this conclusion by contending that his income should be viewed as providing more than one-half of the support for one child rather then viewing the household as a whole, with two children. However, if Mr. Sanchez's argument was adopted, nearly every parent who earned less than the other parent could claim "head of family" exemption, so long as there was more than one child in the household. Taken to its logical extreme, a household with five children and two parents who commingled funds, where one parent earned twice as much as the other parent, would be able to designate the support of four of the five children to one parent, and the support for the one remaining child to the lower-earning parent, and thus have two "head of family" designations for purposes of the exemption. *See e.g. G.E.E.N. Corp. V. Southeast Toyota Distributors, Inc.*, Case No. 93-632-C.V.-ORL-19, 1997 WL 561302 * 3 (M.D. Fla. 1997) (stating "It is axiomatic that both spouses, for the purposes of Fla. Stat. § 222.11 cannot be the head of family. While an individual may qualify as the head of family under one of the three tests, it remains for the Court, examining all of the relevant facts of the case, to determine who is the actual head of the family." *Id. citing Holden*, 420 So. 2d at 1083.) Simply put, the evidence presented at the hearing fails to establish that Mr. Sanchez provides more than one-half of the support for Daniel Sanchez. Rather, the evidence demonstrates that Mrs. Sanchez, rather than Moises Sanchez, provides more than one-half of the support for both children.

Accordingly, examining all of the relevant facts of the case, under the totality of the circumstances, the Court concludes that Defendant Moises Sanchez does not qualify as the Head of Family pursuant to Fla. Stat. § 222.11, and thus the funds in the Wells Fargo Bank account at issue are not exempt from garnishment.

### B.     The Garnishment Amount is limited to 25% of Defendant Moises Sanchez's Earnings

In the Supplement to the Defendant's Claim, the Defendant also contends that pursuant to Florida Statute §222.11(2)(c), only 25% of the Defendant's earnings may garnished as that statute limits the garnishment of earnings to the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. § 1673 (DE # 204 at 1-2).[5]  The Defendant therefore requests that, if the Court determines that Moises Sanchez does not qualify as Head of Family pursuant to Fla. Stat. § 222.11(1)(c), the Court determine that 75% of the sums subject to the Wells Fargo garnishment, be deemed exempt, and that the writ of garnishment be dissolved as to those sums.  Defendant asserts that Fla. Stat. § 222.11(3), which addresses certain limitations on the garnishment of earnings co-mingled in a joint account maintained with a financial institution, demonstrates that the

---

[5] Title 15 U.S.C. § 1673 provides,

> (a) Maximum allowable garnishment
>
> Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
>
> (1) 25 per centum of his disposable earnings for that week, or
>
> (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,
>
> whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

There is no contention by either party that subsection (a)(2) is applicable to the case at bar.

**Florida statute limiting the amount of income that may be garnished is broader than actions addressed under the Consumer Credit Protection Act, which arguably only addresses continuing writs of garnishment.**

In response, the Plaintiff contends that the Defendant's reliance on Fla. Stat. §222.11(2)(c) is missplaced because that statute, like the Consumer Credit Protection Act, only refers to continuing writs of garnishment, and thus does not apply to sums of money already deposited into a debtor's bank account (DE # 210). In addition, the Plaintiff contends that Fla. Stat. § 222.11(3), does not demonstrate that the Florida exemption applies to co-mingled funds, because that section only applies to sums that are deposited by a Head of Family. Thus, Plaintiff contends that because Moises Sanchez does not qualify as a Head of Family, his earnings comingled in a joint account may be garnished in their entirety.

For the following reasons, the Court concludes the that Defendant is correct, in that the sums at issue may only be garnished up to 25%, and the remaining 75% of those sums are exempt from garnishment. First, although at the evidentiary hearing, the Court raised concerns about whether the limitations set forth in the Consumer Credit Protection Act, which is cited in Fla Stat. § 222.11(2)(c), are applicable to matters not involving continuing writs of garnishment, a careful reading of § 222.11(2)(c), as opposed to the Consumer Credit Protection Act, suggests that the Florida statute reaches additional proceedings other than continuing writs of garnishment. Specifically, § 222.11(2)(c) provides that earnings, other than for a head of family, "may not be *attached* or *garnished* in excess of the amount allowed under the Consumer Credit Protection Act." (emphasis added). The plain language of the statute therefore provides that earnings also may not be "attached," and not just "garnished" over a certain

14

amount, which necessarily includes actions beyond continuing writs of garnishment. Thus, this case is unlike the case of *John O. Melby & Co. Bank v. Anderson*, 276 N.W.2d 274 (1979), where the debtor solely relied upon the Consumer Credit Protection Act for his claim of exemption and did not pursue an exemption under the relevant State of Wisconsin statute. *Id.* at 275 n 1.  Rather, in this case, the Defendant seeks to limit the amount of garnishment pursuant to the Florida Statute which references the Consumer Credit Protection Act, but does not seek such protection under that Act directly.

Moreover, as correctly pointed out by the Defendant, in *In re Weinshank*, 406 B.R. 413, 421 (S.D. Fla. 2009), a Court held that under Fla. Stat. § 222.11(2)(c), the limit on the amount of earnings that may be garnished extends to those earnings deposited into a financial institution by a non-head of family debtor.  In reaching this conclusion, the Court did not discuss the distinctions between funds held in a debtor's bank account as opposed to wages held by an employer for purposes of a continuing writ of garnishment. Rather, the Court noted that prior versions of Fla. Stat. § 222.11 did not extend protection from garnishment or attachment for the earnings of anyone other than the "head of family," but that the statute had been amended in October 1993, and now § 2(c) of that statute extends protection to non-heads of family. *Id.* at 419-20. More significantly, the Court observed,

> Florida long ago opted out of the federal exemption scheme in favor of utilizing its own exemptions.  The exemptions available to Floridians are generally found in Fla. Stat. §222.01 et seq.  That the Florida Legislature incorporated the Consumer Credit Protection Act's limits on garnishment into Florida's scheme of exemptions in §222.11 does not render the Consumer Credit Protection Act an independent source of exemptions that is in conflict with the Bankruptcy Code and Florida law. . .

*Id.* at 420. Thus, after thoroughly examining Florida Statute §222.11(2)(c), and giving the

statute its plain meaning, the undersigned concludes that the statute reaches actions broader than just continuing writs of garnishment, including earnings deposited into a non-head of family debtor's bank account.

Finally, subsection (3) specifically provides that earnings exempt under subsection (2) that are deposited in a financial institution are exempt from attachment or garnishment for 6 months, to the extent those fund can be identified. Thus, the earnings which would be exempt if garnished from an employer under § 2(c), remain exempt for 6 months after deposit into a financial institution. To the extent that there may be concerns that the financial institution holding the bank account would be tasked with trying to determine which sums in the garnished bank account consisted of income for purposes of limiting the garnishment to 25% of the debtor's income, such is not a concern in this case where the undisputed facts establish that the only sums at issue in the garnished bank account are deposits from the Defendant's income. Therefore, there is a sum certain that has been garnished by Wells Fargo Bank. Similarly, this case does not involve sums of money which have been co-mingled in such a way that it is impossible to trace back which funds were deposited by Mr. Sanchez from his earnings. Cf. *In re Schlein*, 114 B.R. 780, (M.D. Fla. 1990) (denying exemption where funds had been co-mingled in a way that made it impossible to trace and identify wages earned by the head of household); *In re Parker*, 147 B.R. 810, 813 (M.D. Fla. 1992) (same).

Accordingly, the Court finds that the sums subject to garnishment in the Wells Fargo Writ of Garnishment, which totaled at the time of the evidentiary hearing $2300.50, may only be garnished at 25% of that amount for a total of $575.13, with the remaining 75% of that amount being exempt pursuant to Fla. Stat. §222.11(2)(c).

VI.     **CONCLUSION**

Therefore, based on the foregoing, it is hereby

**ORDERED and ADJUDGED** that Defendant Moises Sanchez's Amended Verified Claim of Exemption From, and Emergency Motion to Dissolve Writ of Garnishment (DE # 202) is **DENIED,** in part, and **GRANTED**, in part.  To the extent that Defendant Moises Sanchez claims that his income is exempt from garnishment pursuant to Fla. Stat. § 222.11(c) as the Head of Family, the Motion is Denied.  To the extent that Defendant Sanchez seeks to limit the amount of garnishment pursuant to Fla. Stat. § 222.11(2)(c), the Motion is Granted.  It is further

**ORDERED and ADJUDGED** that Defendant Sanchez's request to dissolve the Writ of Garnishment issued on May 14, 2012, by the Clerk of Court for the Southern District of Florida as to the Wells Fargo Bank account ending in the last four digits "5467" and held by Quismet Fernandez-Sanchez and Moises Sanchez is **GRANTED, in part**. The $2300.50 in the Wells Fargo Bank Account held by Moises Sanchez and Quismet Fernandez-Sanchez ending in the digits "5467," which remains subject to the Writ of Garnishment shall be dissolved as to 75% of that amount which totals $1,725.38, and the remaining 25% of the monies in that account, totaling $575.13, shall remain subject to the Writ of Garnishment issued against Wells Fargo Bank on May 14, 2012 (DE # 195).

**DONE AND ORDERED** in chambers, in Miami, Florida, on March 28, 2013.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies furnished to:**

**All counsel of record via CM/ECF**